UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE W. HARRIS, Booking No. 1913004,<br><br>Plaintiff,<br><br>vs.<br><br>LOUIS WILLIAMS; LIEUTENANT RIOS; C/O MATTHEWS,<br><br>Defendants. | Case No.: 3:20-cv-0352-GPC-AHG<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2];**<br><br>**2) DENYING MOTION TO APPOINT COUNSEL [ECF No. 3]; AND**<br><br>**3) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM**<br><br>**(ECF Nos. 2, 3.)** |

Antoine W. Harris ("Plaintiff"), a federal detainee currently housed at the Washoe County Jail located in Reno, Nevada, and proceeding pro se, has filed a civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (*See* Compl., ECF No. 1). Plaintiff claims his constitutional rights were violated when he was housed at the Metropolitan Correctional Center ("MCC") in June and July of 2019. (*See id.* at 1, 3.)

1

///

Plaintiff has not prepaid the $400 filing fee required by 28 U.S.C. § 1914(a) to commence a civil action. Instead, Plaintiff has filed a Motion to Proceed IFP, (ECF No. 2), along with a Motion to Appoint Counsel. (ECF No. 3).

## I.  Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his prison certificate. *See* (ECF No. 2 at 5); 28 U.S.C. § 1915(a)(2); S.D. CAL. CIVLR 3.2; *Andrews*, 398 F.3d at 1119. This certificate shows that Plaintiff had an available balance of only $0.17 at the time of filing. *See* (ECF No. 2 at 5.) Thus, the Court assesses no initial partial filing fee at this time. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP, (ECF No. 2), declines to exact the initial filing fee because his trust account statement indicates he may have "no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Warden of the Washoe County Jail or their designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *Id.*

**III.   Motion to Appoint Counsel**

Plaintiff also seeks the appointment of counsel because he is unable to afford a lawyer and claims his imprisonment will limit his ability to litigate. (Pl.'s Mot., ECF No. 3 at 1.) Plaintiff further contends that an eventual trial will likely involve conflicting testimony and evidence that trained counsel will be better able to evaluate and present. *Id.*

However, there is no constitutional right to counsel in a civil case. *Lassiter v. Dept.*

*of Social Servs.,* 452 U.S. 18, 25 (1981); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). And while 28 U.S.C. § 1915(e)(1) grants the district court discretion to "request" that an attorney represent an indigent litigant, *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion may be exercised only under "exceptional circumstances." *Id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires the Court "to consider whether there is a 'likelihood of success on the merits' and whether 'the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved.'" *Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015) (*quoting Palmer*, 560 F.3d at 970).

As currently pleaded, Plaintiff's Complaint demonstrates neither the likelihood of success nor the legal complexity required to support the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). *See Terrell*, 935 F.3d at 1017; *Palmer*, 560 F.3d at 970. First, while Plaintiff may not be formally trained in law, his allegations, as liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), show he nevertheless is fully capable of legibly articulating the facts and circumstances relevant to his claims which are not legally "complex." *Agyeman*, 390 F.3d at 1103. Second, for the reasons discussed more fully below, Plaintiff's Complaint requires sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, and it is simply too soon to tell whether he will be likely to succeed on the merits of any potential constitutional claim against any of the named Defendants. *Id.*

Therefore, the Court finds no "exceptional circumstances" currently exist and **DENIES** Plaintiff's Motion to Appoint Counsel, (ECF No. 3), without prejudice on that basis. *See, e.g., Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014) (affirming denial of counsel where prisoner could articulate his claims in light of the complexity of the issues involved, and did not show likelihood of succeed on the merits).

**III.   Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

    A.   <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B.   Factual Allegations

Plaintiff, a federal detainee, was transferred to the Metropolitan Correctional Center ("MCC") on June 6, 2019 for a "medical evaluation." (Compl. at 3.) On June 26, 2019, Plaintiff alleges that he was returning from the showers to find Defendant Mathews "searching [his] cell." (*Id.*) Plaintiff "sat down at the table" and began "playing cards" with his cellmate. (*Id.*) Mathews told Plaintiff to "go stand by the gate," where Plaintiff was then "cuffed" by other correctional officers and taken to the "SHU[2]." (*Id.*) Plaintiff claims Mathews sent him to the SHU claiming that Plaintiff was "up in his face, threatening, making threatening gestures with [Plaintiff's] hands and shoulders, and said [Plaintiff] was physically threatening him." (*Id.*)

On July 2, 2019, Correctional Officer Zuniga[3] "called [Plaintiff] to hear the shot[4] Matthews wrote on [him]." (*Id.*) Zuniga asked Plaintiff for his version of the events and Plaintiff informed him that "there was no incident" and Mathews "fabricated the whole incident." (*Id.*) Plaintiff told Zuniga that if he "reviewed the cameras" he would see that "none of what [Mathews] alleged" happened and Plaintiff was telling the truth. (*Id.*) Zuniga informed Plaintiff that he had reviewed the cameras and determined that Plaintiff "was being truthful." (*Id.*) Zuniga "expunged the shot." (*Id.*)

Zuniga notified Defendant Lieutenant Rios, the "SHU Lieutenant," that Plaintiff's "shot was expunged." (*Id.*) Rios informed Zuniga that he "had a meeting with Defendant Louis Williams II (Warden)" to inform Williams that Plaintiff's "shot had been expunged" and he could release Plaintiff back to general population. (*Id.* at 3-4.) However, Williams did not release Plaintiff back to general population but instead kept him in the "SHU for over 2 weeks." (*Id.* at 4.)

---

[2] SHU is an acronym for "secured housing unit."
[3] Zuniga is not a named Defendant.
[4] Plaintiff claims a "shot" is the federal equivalent of a "write up" which is the terminology used in state institutions for rule violation reports.

6

Plaintiff repeatedly asked several correctional officers why he was still in the SHU and was told that "they didn't know" and "others would say [Plaintiff] should have been out of the SHU." (*Id.*) Plaintiff also asked Rios several times why he was still in the SHU and purportedly Rios would tell him that "he's having a meeting with [Williams] and their working on it." (*Id.*) Plaintiff claims he did not have "process whatsoever for being held in the SHU for over 2 weeks after [his] shot was expunged." (*Id.*) Plaintiff seeks $30,000 in compensatory damages and $50,000 in punitive damages. (*Id.* at 9.)

### C. Bivens

Plaintiff has brought his claims pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). "In *Bivens*, the Supreme Court 'recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018) (quoting *Hernandez v. Mesa*, __ U.S. __, 137 S. Ct. 2003, 2006 (2017) (citation omitted)). "In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983.'" *Iqbal*, 556 U.S. at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)).

### D. Fifth Amendment Due Process Claim

The "first question a court must ask in a case like this one is whether the claim arises in a new *Bivens* context, *i.e.*, whether the case is different in a meaningful way from previous *Bivens* cases decided by the Court." *Vega*, 881 F.3d at 1153 (citing *Abbasi*, 137 S.Ct. at 1864). Since *Bivens* was decided, the Supreme Court has "only expanded this 'implied cause of action' twice." *Ziglar v. Abbasi*, __ U.S. __, 137 S.Ct. 1843, 1854 (2017); *see also Carlson v. Green*, 446 U.S. 14 (1980) (providing a *Bivens* under the Eighth Amendment's Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment to a prisoner); *Davis v. Passman*, 442 U.S. 228 (1979)

(providing a *Bivens* remedy under the Fifth Amendment's Due Process Clause for gender discrimination).

In *Vega*, the Ninth Circuit held that a federal prisoner's procedural due process claims arising out of prison disciplinary charges presents a "new context" under *Abbasi*. *Vegai,* 881 F.3d at 1154. Here, to the extent that Plaintiff claims he was denied "process," the Court liberally construes Plaintiff's claims as a Fifth Amendment due process claim. Consequently, as in *Vega*, Plaintiff's claims present a "new context" under *Abbasi*.

For claims arising in a "new context" under *Abbasi*, the Supreme Court has fashioned a "two-step analysis for determining congressional intent as to the appropriateness of a *Bivens* remedy." *Western Radio Services Co. v. U.S. Forest Service*, 578 F.3d 1116, 1120 (9th Cir. 2009) (citing *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). First, a court must determine "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550. Second, "a Bivens remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 137 S.Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). "'Alternative remedial structures' can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega*, 881 F.3d at 1154.

In *Vega*, the Ninth Circuit found that federal inmates had adequate alternative remedies to address alleged due process violations arising from prison disciplinary charges by seeking "'formal review of an issue relating to *any* aspect of his . . . own confinement' under the Administrative Remedy Program ("ARP"), 28 C.F.R. § 542.10(a)," or "assistance of counsel [under] § 542.16(a), appeal[ing] any adverse findings to the Regional Director, § 542.15(a), and then to [Federal Bureau of Prisons]'s General Counsel." *Vega*, 881 F.3d at 1154 (quoting *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 74 (2001)) (emphasis in original).

Here, Plaintiff states that, once he was out of the SHU, he did not "have the necessary time to complete the [grievance] process" because he was "almost done with the [medical] evaluation and on [his] way back to Washoe County Jail." (Compl. at 10.) Thus, Plaintiff acknowledges that there was a grievance procedure available to him, without adequately addressing why he could not file a grievance. Plaintiff's claim that it could not be "completed" before he was transferred lacks specificity and does not rule out the availability of this remedy. Consequently, on these facts, it appears there was an "alternative remedial structure." *Abbasi*, 137 S.Ct. 1858; *see also Vega*, 881 F.3d at 1154.

In addition, Plaintiff could also have an alternative remedy under the Federal Tort Claims Act ("FTCA"). The FTCA provides a remedy "for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission" of a federal employee. 28 U.S.C. § 2672; *see also* 28 U.S.C. § 2679(b)(1) (explaining that a suit under the FTCA against the United States provides the exclusive remedy for torts committed by federal employees); *but see Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006) (finding district court lacked jurisdiction to hear a false imprisonment claim pursuant to the discretionary function exception of the FTCA). Here, Plaintiff alleges Defendants "falsely imprisoned" him and the Warden committed "gross negligence" by failing to promptly release him from the SHU. (Compl. at 4.) Plaintiff does not allege why he failed to pursue an FTCA suit or, in the alternative, explain why this remedy was not available to him.

The Court finds, for all the above stated reasons, that Plaintiff has not articulated a reason to extend a *Bivens* action based on the Fifth Amendment due process claims. Accordingly, Plaintiff's Fifth Amendment due process claims are **DISMISSED** for failing to state a claim upon which relief may be granted.

E.  Eighth Amendment

Plaintiff alleges, without any specific factual allegations, that his Eighth Amendment rights have been violated. (Compl. at 5.) However, because Plaintiff was a

pre-trial detainee and not a prisoner at the time his claims arose, the Eighth Amendment is not applicable to his claims. *See Bell v. Wolfish*, 441 U.S. 520, 530 (1979) (holding that the Fifth Amendment's Due Process Clause prohibits subjecting federal pretrial detainees to conditions of confinement that "amount to punishment."); *see also DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 199 n. 6 (1989) ("The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.") Therefore, Plaintiff's Eighth Amendment claims are **DISMISSED** for failing to state a claim upon which relief may be granted.

If Plaintiff chooses to amend this claim, he must allege specific facts to demonstrate how the conditions of his confinement violated his constitutional rights. Moreover, the PLRA requires "a prior showing of physical injury that need not be significant but must also be more than *de minimis*." *Oliver v. Keller,* 289 F.3d 623, 627 (citing 42 U.S.C. § 1997e). Plaintiff's Complaint is devoid of any factual allegations that he suffered any physical injury when he was housed in the SHU.

## IV. Conclusion and Order

Based on the foregoing, the Court:

1. **DENIES** Plaintiff's Motion to Appoint Counsel (ECF No. 3).

2. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

3. **DIRECTS** the Warden of the Washoe County Jail, or their designee, to collect from Plaintiff's trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

      3.      **DIRECTS** the Clerk of the Court to serve a copy of this Order on Warden, Washoe County Jail, 911 Parr Blvd, Reno, Nevada, 89512.

      4.      **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A and **GRANTS** him 90 days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within 90 days, the Court may enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and § 1915A, and in light of his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: May 26, 2020

Hon. Gonzalo P. Curiel
United States District Judge